UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Jessica Alice Auger

v.                                    Civil No. 11-cv-318-JD

Michael J. Astrue, Commissioner,
Social Security Administration

 O R D E R

Jessica Alice Auger seeks judicial review, pursuant to 42
U.S.C. § 405(g), of the decision of the Commissioner of the
Social Security Administration, denying her application for
social security disability insurance benefits under Title II.
Auger contends that the Administrative Law Judge ("ALJ") erred
because he relied on a vocational expert's opinion without
determining whether it was consistent with the Dictionary of
Occupational Titles ("DOT") as required by Social Security Ruling
("SSR") 00-4p and because substantial evidence does not support
the ALJ's residual functional capacity assessment. The
Commissioner moves for an order affirming the decision.

Background

Auger filed an application for disability insurance benefits
in May of 2009, alleging a disability since March of 2005 due to
complex regional pain syndrome affecting her left shoulder and

neck.¹  At the time of her application, she was twenty-six years
old.  She had a high school education, was licensed as a nurse's
aide, and had previously worked as a community integration
specialist, daycare worker, nurse's aide, mailer, teacher's aide,
babysitter, cashier/checker, and stocker.

A.  Medical background

Auger was injured at work in December of 2004 while
transferring a patient from bed to a wheelchair.  Thereafter, she
complained of constant left shoulder pain that radiated into her
neck and down her left arm.  Diagnostic studies showed normal
results, and Auger was released for light duty work with no
overhead lifting or patient transfers.  In August of 2005, Dr.
Gilbert Fanciullo reported that Auger continued to have constant
pain that was not improved with injections or medication.  On
examination, Dr. Fanciullo diagnosed complex regional pain
syndrome.  Auger continued to complain of pain through 2006.

In March of 2008, Auger received a spinal stimulator implant
that provided good pain relief.  She continued to improve so that

¹In the joint factual statement, the parties define "complex
regional pain syndrome" as "an uncommon form of pain that usually
affects an arm or leg.  Complex regional pain syndrome typically
develops after an injury, surgery, stroke or heart attack, but
the pain is out of proportion to the severity of the initial
injury, if any."

2

by January of 2009, Auger was able to do some housework, drive, and shop.  Nevertheless, she felt very limited physically.

In January of 2009, a physical therapist, Eric Hartman, conducted a functional assessment.  Hartman assessed Auger with a sedentary work capacity but noted that she could improve with further rehabilitation.  In April of 2009, Dr. Fanciullo reported that Auger was about the same and thought that her prognosis was poor.

A state agency physician, Dr. Hugh Fairley, reviewed Auger's medical records in June of 2009.  He found that Auger retained the functional capacity to do light work with the use of her left arm in a supportive role only.  Dr. Fairley stated that Auger should avoid gross manipulation with her left hand and arm.  In July of 2009, an occupational therapist, Stacia Martin, found that Auger retained the capacity for light work.  In December of 2010, another occupational therapist, James Samson, found that Auger could occasionally lift and carry ten pounds; could sit, stand, and walk for four hours each; could use her right hand frequently; could use her left hand occasionally but not to reach overhead; and could occasionally crawl and climb.

B.  Hearing

A hearing was held on January 28, 2011.  Auger testified that she had pain from her left ear down through her left

3

shoulder and numbness and tingling in her left arm. She
described a typical day to include housework or laundry, letting
her dog outside, picking up her nephew at school, volunteering to
have her dog visit nursing home patients, and attending
appointments. She testified that she had difficulty with
repetitive use of her left arm, lifting heavy objects, and
looking down. She said that half of the days of the week were
bad days when the pain was worse causing her to have difficulty
in getting through her housework.

A vocational expert also testified. The ALJ asked the
vocational expert to consider an individual with Auger's age,
education, and experience who could do light work but with only
occasional use of her left arm, no overhead reaching with her
left arm, and with some postural limitations. The vocational
expert testified that an individual with those capacities and
limitations could do Auger's past work as a daycare worker,
mailer, teacher's aide, and cashier/checker. He also testified
as to other work that she could do.

When the ALJ modified the hypothetical to assume that the
left arm could only be used to assist, the vocational expert said
that the teacher's aide position would still be possible, along
with other work that he listed. In response to a further
limitation as to the amount of weight the individual could lift,
consistent with the functional capacity found by Samson, the

4

vocational expert said that the individual could still work as a
teacher's aide. The vocational expert explained that although
the DOT listed the teacher's aide position as light work, that
listing was because of the standing and walking required, not
because heavier lifting was required. The vocational expert also
identified the job of charge account clerk, a sedentary job, as
one the individual could do.

Auger's counsel asked the vocational expert about the
requirements of the teacher's aide job as described in the DOT's
companion volume, Selected Characteristics of Occupational Titles
("SCO"), which noted frequent reaching, handling, and fingering.
The vocational expert responded that neither the DOT nor the SCO
collected information about whether bilateral use of the hands
was required. The vocational expert explained that because that
information was not available from the DOT or the SCO, he was
relying on his own experience in giving his opinion that the job
of teacher's aide could be performed by an individual with
limited use of her left arm and hand.

C. Decision

The ALJ issued his decision on February 7, 2011. He found
that Auger had a severe impairment due to complex regional pain
syndrome in her left arm but retained the functional capacity to
do light work with frequent use of her left arm except for

5

overhead reaching. Based on the residual functional capacity
assessment, the ALJ found that Auger could return to her past
relevant work as a daycare worker, mailer, teacher's aide, and
cashier/checker. Alternatively, the ALJ found that Auger could
do other jobs that had been identified by the vocational expert.
As a result, the ALJ found that Auger was not disabled.

When the Decision Review Board did not complete review
within the time allowed, the ALJ's decision became the final
decision of the Commissioner.

## Standard of Review

In reviewing the final decision of the Commissioner in a
social security case, the court "is limited to determining
whether the ALJ deployed the proper legal standards and found
facts upon the proper quantum of evidence." Nguyen v. Chater,
172 F.3d 31, 35 (1st Cir. 1999). The court defers to the ALJ's
factual findings as long as they are supported by substantial
evidence. § 405(g). "Substantial evidence is more than a
scintilla. It means such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." Astralis
Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62,
66 (1st Cir. 2010).

Disability, for purposes of social security benefits, is
"the inability to do any substantial gainful activity by reason

6

of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a). The ALJ follows a five-step sequential analysis for determining whether a claimant is disabled. § 404.1520. The claimant bears the burden, through the first four steps, of proving that her impairments preclude him from working. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fifth step, the Commissioner determines whether other work that the claimant can do, despite her impairments, exists in significant numbers in the national economy and must produce substantial evidence to support that finding. Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

## Discussion

In the present case, the ALJ denied Auger's application at step four, based on a residual functional capacity finding for light work with some restrictions and the vocational expert's opinion, finding that Auger could do her past relevant work. Alternatively, the ALJ found at step five that Auger could do other work, also based on the residual functional capacity finding and the opinion of the vocational expert. Auger contends that the ALJ erred and that her case must be remanded for further proceedings because the ALJ failed to determine, as required by

SSR 00-4p, that the vocational expert's opinions did not conflict
with the DOT and because substantial evidence is lacking to
support the ALJ's residual functional capacity finding.

## A. Social Security Ruling 00-4p

SSR 00-4p, 2000 WL 1898704 (SSA Dec. 4, 2000), provides
standards for an ALJ's reliance on vocational expert opinions.[2]
The Commissioner primarily uses the DOT and SCO for information
about the requirements of work but may also use the opinions of a
vocational expert for complex vocational issues. Id. at *2. At
a hearing, the ALJ must ask the vocational expert whether his
opinion is consistent with the DOT. "When there is an apparent
unresolved conflict between [vocational expert] evidence and the
DOT, the adjudicator must elicit a reasonable explanation for the
conflict before relying on the [vocational expert] evidence to
support a determination or decision about whether the claimant is
disabled." Id. Therefore, an ALJ has an affirmative
responsibility to ask a vocational expert about conflicts between
his opinions and the DOT, and when a conflict exists, the ALJ
must explain the resolution in the decision. Id. at *4; see

_____

[2]SSR is an abbreviation for Social Security Ruling. "Social
Security Rulings are agency rulings 'published under the
authority of the Commissioner of Social Security and are binding
on all components of the Administration.'" Sullivan v. Zebley,
493 U.S. 521, 532 n.9 (1990) (quoting 20 C.F.R. § 422.408).

8

also, e.g., Burton v. Astrue, 2012 WL 1184425, at *4 (D. Me. Apr. 6, 2012).

In this case, the ALJ did not ask the vocational expert whether his opinions were consistent with the DOT. Auger argues that the ALJ's failure to do so requires remand because the jobs the vocational expert identified are described in the SCO to require frequent or constant reaching, which conflicts with the functional capacity the ALJ described in the hypothetical to the vocational expert. The Commissioner argues that the ALJ's error in failing to ask the vocational expert about the potential for conflict does not require remand in this case because there is no apparent conflict between the vocational expert's opinion and the SCO job descriptions and because Auger's counsel asked the vocational expert for an explanation and he provided one.

The ALJ's hypothetical questions to the vocational expert all included limitations on reaching. The jobs the vocational expert identified all require at least frequent reaching. That discrepancy at least suggests that the vocational expert's opinions are inconsistent with the DOT.

Auger's counsel brought the inconsistency with respect to the teacher's aide job to the vocational expert's attention at the hearing. The vocational expert explained that the DOT does not address whether the work requires bilateral use of the arms. The vocational expert stated that in his opinion restrictions in

9

the ability to use the left arm do not necessarily conflict with the DOT description for the teacher's aide job because the worker could use the dominant arm, her right arm in Auger's case, to do reaching and other manipulation activities.  The vocational expert based his opinion on his experience in the 1970s teaching in public schools.  Despite the discussion of the issue at the hearing, the ALJ did not address the discrepancy in his decision.

A mere technical failure to follow the requirements of SSR 00-4p, such as when the ALJ failed to inquire about a conflict but the vocational expert's opinion is consistent with the DOT, does not require remand.  See, e.g., Lafrennie v. Astrue, 2011 WL 1103278, at *9 (D. Mass. Mar. 23, 2011); Huffman v. Astrue, 2009 WL 4927136, at *8-*9 (D.R.I. Dec. 18, 2009).  In this case, however, it is not clear whether the vocational expert's opinion was consistent or inconsistent with the DOT.  The vocational expert's explanation, based on his short teaching experience more than thirty years ago, may not meet the requirement for a reasonable explanation under SSR 00-4p.  Therefore, the case must be remanded for further consideration of the vocational expert's evidence.

## B.  Residual Functional Capacity

Auger also contends that the ALJ erred in finding that she could frequently use her left arm to reach, handle, finger, push,

10

and pull.  Auger notes that even Dr. Fairley, to whose opinion
the ALJ gave substantial weight, found that she had limited
ability to reach, handle, and finger with her left arm and hand.
The Commissioner admits that the ALJ's residual functional
capacity assessment is not supported by the record but argues
that the error is harmless.

    Because the case must be remanded to address the vocational
expert's evidence, the ALJ also will have the opportunity to
revisit the residual functional capacity assessment.

### Conclusion

    For the foregoing reasons, Auger's motion to reverse and
remand the Commissioner's  decision (document no. 7) is GRANTED.
The Commissioner's motion to affirm the decision (document no.
10) is DENIED.  The clerk of court shall enter judgment
accordingly and close the case.

    SO ORDERED.

                                    Joseph A. DiClerico, Jr.
                                    United States District Judge

September 12, 2012

cc:  Peter K. Marsh, Esq.
     Robert J. Rabuck, Esq.